# Commonwealth *v.* Daniel Werling, Appellant.

*Criminal law—Murder—Evidence.*

On the trial of an indictment for murder, evidence for the commonwealth tended to show that the prisoner procured a revolver, immediately afterwards bought cartridges, and having loaded the weapon, went to a market house where his wife was at a stall in stooping position in the act of waiting on a customer. He fired a shot, which missed her, when she immediately rose and fled towards a door. He pursued, and, when about five or six feet from her, he fired the second shot which took effect in her back. She shrieked, and, falling against the door, it opened. As she was in the act of falling he shot her again. There was also testimony that the prisoner had previously threatened to kill his wife, and that, immediately after the shooting, he said to the person who held him: "I know I shot my wife, I intended to do this long ago," and afterwards when informed that she was dead, he said he was glad of it. *Held*, that the evidence was sufficient to sustain a verdict of murder of the first degree.

*Evidence—Insanity as defence—Drunkenness.*

Where insanity is set up as a defence to crime, the burden of proof is upon the prisoner to show such circumstances as will justify the jury in finding that he was insane at the time the crime was committed.

Evidence that, during a period of four or five years before the crime was committed, the prisoner was a man of known intemperate habits, that he was frequently drunk, and he was oftener drunk than sober, is inadmissible to show the condition of the prisoner at the time of the commission of the crime.

Argued Oct. 22, 1894. Appeal, No. 247, Oct. T., 1894, by defendant, from judgment of O. & T. Allegheny Co., June T., 1894, No. 6, on verdict of guilty of murder of the first degree. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.     Affirmed.

Indictment for murder.

The facts appear by the opinion of the Supreme Court.

Defendant proposed to prove by David Bankard and divers witnesses that for a long period, not less than four or five years, defendant had been addicted to excessive drinking habits, to such an extent that he was an habitual drunkard, being drunk a great deal more frequently than he was sober, and being of a quarrelsome disposition when he was drunk; that within the last two years he twice took the Keeley cure unsuccessfully. For the purpose of showing, in connection with the testimony already produced on the part of the commonwealth as well as on the part of the defence, the state of the prisoner's mind at the time of the killing charged in the indictment, to the end that the jury may determine whether or not at the time of the killing he was in such state of mind as to be capable of the deliberation and premeditation necessary to constitute murder of the first degree, and also to determine generally whether at that time he was in such state of mind as to be responsible criminally for his act.   Objected to : (1) As incompetent and irrelevant; (2) that the offer is not directed to the condition of the defendant at the time of the alleged offence, and (3) so far as the witness on the stand is concerned it appears by his testimony that he had not seen him subsequently to August, 1893, eight months prior to the commission of the offence.   Objection sustained.   Bill sealed. [4]

A similar offer, by other witnesses, was rejected. [5]

Defendant proposed to prove that about 10 o'clock on the morning of April 7, 1894, while the witness was employed at housework in the house of Mrs. Heinrich, defendant's sister, defendant came to the house very pale and agitated; broke into the house suddenly where his sister was sitting and said he had been up at home and his house was locked up and everything gone; inquired what it meant, asked where his clothing was and was told by his sister that it had been taken to his mother's house, which was next door to his sister's house; that he got his clothing, changed his apparel and said he would go down to the market to see Barbara, the deceased, to see what this all meant, and that the sister advised him to go to see his brother Louis at the market first. Objected to as irrelevant to prove abnormal condition of mind. Objection sustained and bill sealed. [6]

The court charged in part as follows, by SLAGLE, J.:

" Every man is presumed to be capable of forming a purpose and acting rationally, and therefore to be responsible civilly and criminally for his deliberate acts, and this presumption remains until it is removed by evidence. It is not the duty of the commonwealth to prove affirmatively that this man is sane, because that is presumed, but where it is claimed it devolves upon the defendant to prove that he is insane and incapable of rational action to such an extent as to render him irresponsible. This proof, as I say, must be furnished by the defendant. He is not bound to prove it beyond reasonable doubt, but simply by the weight of evidence, simply by the preponderance of evidence, to satisfy you that he is insane and therefore irresponsible. . . .

" [An insanity which would relieve him from responsibility for the offence is such derangement of mind as carries away his will and prevents him from acting in a rational manner. Upon this subject our court has said: ' Insanity is mental or moral, the latter being sometimes called homicidal mania, and properly so. A man may be mad on all subjects and then, though he may have a glimmering of reason, he is not a responsible agent. This is general insanity; but if it be not so great in its extent or degree as to blind him to the nature and consequences of his moral duty it is no defence to an accusation of crime. It must be so great as to entirely destroy his percep-

tion of right and wrong, and it is not until that perception is thus destroyed that he ceases to be responsible. It must amount to delusion or hallucination controlling his will, making the commission of the act, in his apprehension, a duty of overruling necessity.'

" Again, partial insanity is confined to a particular subject, being sane on every other. In that species of madness it is plain that he is a responsible agent if he were not instigated by his madness to perpetrate the act. He continues to be a legitimate subject of punishment although he may be laboring under a moral obliquity of perception, as much so as if he was laboring under an obliquity of vision. Again, the law is that, whether the insanity be general or partial, the degree of it must be so great as to have controlled the will of its subject and to have taken from him the freedom of moral action.

" Now that is the principle upon which you will act and you will apply the evidence of the case to that. If you find under the testimony of the commonwealth that he is guilty of murder of the first or second degree, as I have indicated, then you are to ascertain whether he is responsible under the principles that I have just read, or, if he is not wholly exonerated, whether his mental condition was such as to reduce the grade of the crime from murder of the first degree to murder of the second degree, by reason of the fact he was incapable of that deliberation and premeditation which the law requires.] " [3]

Verdict of guilty of murder of the first degree, upon which judgment of sentence was passed.

*Errors assigned* were (1) in failing to instruct the jury that defendant was entitled to the benefit of any reasonable doubt respecting his guilt or the degree of his offence ; (2) in failing to instruct the jury that there is a distinction in the law between the mental unsoundness that renders its possessor entirely irresponsible for a homicide, and that frame or condition of mind which incapacitates its possessor from the deliberation and premeditation essential to constitute the crime of murder of the first degree ; (3) portion of charge as above, quoting it ; (4–6) rulings on evidence, quoting bills of exception.

*D. F. Patterson, Charles A. O'Brien* with him, for appel-

lant.—In a homicide case, it is the duty of the court to adequately instruct the jury with respect to the rights of the accused, even if not so requested in the form of points.

There is a marked distinction between that condition of mental unsoundness which exempts from criminal responsibility altogether and that condition of the mind which renders it incapable of the premeditation and deliberation essential to constitute the crime of murder of the first degree: Jones v. Com., 75 Pa. 403.

*Clarence Burleigh,* district attorney, for appellee, cited: Com. v. Cloonen, 151 Pa. 605; Whart. Cr. L. § 54.

OPINION BY MR. CHIEF JUSTICE STERRETT, Nov. 5, 1894:

Aside from the testimony relating to the defence interposed by the prisoner, the evidence is clear and practically uncontradicted that he procured the revolver for the purpose of killing his wife. Almost immediately thereafter, he purchased cartridges, and then going into the basement of a saloon, he there loaded the weapon. Thus armed, he went directly to the Pittsburg Market House, and arriving at the end of the stall where his wife, in a stooping position, was in the act of waiting on a customer, he fired the first shot, which, missing her, struck the wall of the market house. She immediately arose and fled towards a door. He pursued, and, when about five or six feet from her, he fired the second shot, which took effect in her back. She shrieked, and, falling against the door, it opened. As she was in the act of falling he shot her again. One of the shots struck her below the shoulder blade, inflicting a dangerous wound and one that probably would have proved fatal. The other entered the back of her neck and passed through the spinal column, at the base of the brain. The latter, according to the testimony of a professional witness who examined the wounds, was necessarily and almost instantaneously fatal. In addition to the procurement, preparation, and use of the deadly weapon upon the person of his wife, there was testimony to the effect that, while being taken to the work house to serve a sentence for sixty days, the prisoner declared he would kill his wife when he came out. When arrested, immediately after the shooting, he said to the person

who held him : "I know I shot my wife ; I intended to do this
long ago ; " and afterwards, when informed that she was dead,
he said : "I am d— glad of it."

Other criminating testimony, in addition to that above out-
lined, together with considerable corroborating evidence, might
be noticed ; but that already referred to is quite sufficient to
show that all "the ingredients necessary to constitute murder
in the first degree" were "proved to exist" in this case.   In-
deed it is seldom that a clearer and stronger case, for convic-
tion of murder of the first degree, is presented to a court and
jury.

As stated by the learned judge, the only answer that was
made to the case presented by the commonwealth, was "that
the prisoner was not, at the time, capable of forming any pur-
pose that was criminal, or at all events was not capable of ex-
ercising the deliberation and premeditation that is necessary
to constitute the crime of murder of the first degree : that
he was insane and therefore not responsible for his act at all,
but that, if responsible, his insanity was of such a character
as would reduce the offence from murder of the first degree to
murder of the second degree at least."   As to this line of de-
fence the court very properly instructed the jury that the bur-
den of proof was on the prisoner ; and he afterwards added :
"It is for you to say whether there are any circumstances in
this case that justify you in finding as a fact, upon the weight
of testimony, that this man was at that time insane."

In this connection, it may be remarked that there was no
error in excluding the offers of testimony stated in the last
three specifications.   The objections to said offers were well
taken and rightly sustained.

The case was fairly submitted to the jury in a clear, concise
and fully adequate charge.   The fact of the killing with a
deadly weapon, procured and loaded for the purpose, having
been clearly established, and not controverted by the prisoner,
it was unnecessary to dwell at any considerable length on the
circumstances attending the commission of the crime.   As-
suming it to be true that the prisoner's wife died from the ef-
fect of the pistol shot wounds or wound inflicted by him, the
court instructed the jury, inter alia, that the presumption of
law, arising therefrom, would be that the offence was murder

at common law, or murder of the second degree under our statute ; and hence, in order to justify a conviction of murder of the first degree, it was incumbent on the commonwealth to show circumstances that would justify such a finding : in other words, that the burden of raising the degree from murder of the second to murder of the first degree was on the commonwealth.

The defence interposed by the prisoner, together with the law applicable thereto, was very fully and fairly submitted to the jury.    On that branch of the case, the charge was more favorable to the prisoner than the testimony warranted.    After correctly explaining the law relating to different forms and degrees of insanity, he concluded thus : " Now this is the principle upon which you will act, and you will apply the evidence to that.    If you find under the testimony of the commonwealth that he is guilty of murder of the first or second degree, as I have indicated, then you are to ascertain whether he is responsible under the principles that I have just read, or, if he is not wholly exonerated, whether his mental condition was such as to reduce the grade of the crime from murder of the first degree to murder of the second degree by reason of the fact that he was incapable of that deliberation and premeditation which the law requires."

The second and third specifications of error are not sustained.

As to the first specification : While the learned judge did not, in very words, instruct the jury that the prisoner " was entitled to the benefit of any reasonable doubt, respecting his guilt, or the degree of his offence," the jury, in view of the practically undisputed facts of the case, could not have failed to understand that in this, as in all criminal cases, it was their duty to give the prisoner the benefit of any reasonable doubt as to the facts necessary to constitute the felony of which he was found guilty.

We are satisfied from an examination of the record that the prisoner had a fair and impartial trial.    There appears to be nothing in the case that would justify us in disturbing the verdict or the judgment pronounced thereon.

The judgment is therefore affirmed, and it is ordered that the record be remitted to the court below for the purpose of execution.